## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

**JONATHAN MARCUM**
**and**
**JACKIE E. LEWIS, SR.,**
**For themselves and on behalf of all**
**similarly situated individuals.**

      **Plaintiff,**

**v.**                                **Civil Action No.:  3:12cv108**

**DOLGENCORP, INC. a/k/a Dolgencorp, LLC**
**a/k/a Dolgen, LLC, d/b/a Dollar General**

      **Defendant.**

### SECOND AMENDED CLASS COMPLAINT

COME NOW, the Plaintiffs, Jonathan Marcum and Jackie E. Lewis, Sr., by counsel, on behalf of themselves and all similarly situated individuals, and allege the following claims:

### INTRODUCTION

1.    This action is brought under the Federal Fair Credit Reporting Act (FCRA), 15 U.S.C. §1681, *et seq*. The FCRA imposes on employers that use a consumer's public records background check several important procedural requirements designed to protect consumers like Plaintiffs.  Plaintiffs applied for employment at a Dollar General in Richmond.  Dollar General failed to comply with procedural protections and requirements imposed on it by the FCRA.

### JURISDICTION/VENUE

2.    The Court has federal question jurisdiction under the FCRA, 15 U.S.C. §1681p.

3.      Venue is proper in this Court under 28 U.S.C. §1391(b) because all material events occurred in this district and division; the Plaintiffs reside in this district and division; Defendant has its local office in and regularly does business in this district and division; and the credit reporting agency that provided the consumer report to Defendant is operating in this district and division.

## PARTIES

3.      Jonathan Marcum (hereinafter "Marcum") is a citizen of Virginia, resides in Richmond and is a "consumer" as protected and governed by the FCRA.

4.      Jackie E. Lewis, Sr. (hereinafter "Lewis") is a citizen of Virginia and is a "consumer" as protected and governed by the FCRA.

5.      Dolgencorp, Inc. a/k/a Dolgencorp, LLC a/k/a Dolgen, LLC, d/b/a Dollar General (hereinafter "Dollar General") is a Limited Liability Company based in Kentucky.  At all times relevant hereto, Dollar General was a "user" of the consumer reports of Plaintiffs, as governed by the FCRA.

6.      Third Party General Information Services, Inc. ("GIS") is a consumer reporting agency engaged in the business of creating, formatting and furnishing employment purpose consumer reports on behalf of and to business customers such as Dollar General.  At all times relevant herein, GIS was acting either as a consumer reporting agency or in a separate role as the agent of Dollar General.

## FACTS AS TO MARCUM

3.      Marcum applied for a job at Dollar General on or about January 12, 2012.  The woman who interviewed him, a woman named Ruth, told him "If you want the job, it's yours."

4.      The Dollar General where Marcum applied is located in the 360 West Shopping Center on Hull Street Road in the City of Richmond, Virginia.

5.      Ruth was then and at all times mentioned in this lawsuit acting within the scope of her employment at Defendant.

6.      As part of the application process Defendant provided Marcum with an FCRA disclosure, and Marcum electronically signed an authorization permitting the Defendant to obtain a consumer report for employment purposes.

7.      The disclosure was not FCRA compliant because it was not a "stand alone" document, nor was it clear and unambiguous.

8.      Instead, the disclosure and authorization that accompanied it contained unnecessary, impermissible language including the following non-FCRA language: "I hereby authorize and direct all persons who may have information, relevant to this consumer report, to disclose to Dollar General or its agents, and I hereby release all persons, including those disclosing information, Dollar General and its agents, from liability on account of disclosure."

9.      In addition, the disclosure included the non-FCRA language: "I also hereby authorize the company or its agents to request and obtain the above described information for as long as I am employed by the company."

10.     On or about January 12, 2012 Defendant submitted a request for a consumer report on Marcum to General Information Services (hereinafter "GIS"), a consumer reporting agency.

11.     Upon information and belief, GIS completed the consumer report and made it available on the Internet to Defendant on January 19, 2012.

12.     On either January 19 or January 20, 2012, Defendant accessed and reviewed the consumer report via the Internet or otherwise.

13.     On January 20, 2012, Marcum learned that Ruth was telling people in the shopping center where Dollar General is located that Marcum was not going to get the job because of his criminal record.

14.     Ruth specifically informed people in the shopping center, including Henry _____ a manager at the Radio Shack in the same shopping center, that Marcum had a firearms conviction.

15.     Ruth also informed people in the shopping center, including Mr. Henry _____, that Marcum had a conviction for domestic abuse.

16.     Marcum has never been convicted of a firearms charge, nor has he ever been convicted of domestic abuse.

**DOLLAR GENERAL IS RESPONSIBLE FOR GIS FCRA VIOLATIONS**

17.     In discovery, Plaintiff has learned that decision information provided by Ruth was not a formal notice of adverse action.  Instead, the actual decision as to whether to take the adverse hiring decision was made jointly between Defendant and GIS.

18.     Dollar General contracts with GIS for GIS to perform the FCRA compliance tasks otherwise required of Dollar General, and the other employers GIS services.

19.     On information and belief, GIS marketed its services to Dollar General and represented and held itself out as knowledgeable and competent in both furnishing accurate background checks and in implementing an employer's hiring criteria and providing employer notices in accordance with the FCRA.

20.     On information and belief, in response to GIS' marketing and representations, Dollar General contracted with GIS to provide what GIS describes as, "Adverse Action Services."  http://www.geninfo.com/otherscreening.asp.   GIS represents to employer customers such as Dollar General that it can generate the actual background check and apply it internally to an employee application using what it describes as "automated report grading."  GIS actually codes Dollar General applications as "Hire" and "Not Hired"  (or similar adjudication results) without any meaningful involvement of Dollar General itself.

21.     After GIS makes Dollar General's hiring decision, "Through our management of the adverse action/dispute process, GIS can distribute Pre-Adverse and Adverse Action letters (to include state-mandated consumer letters where applicable) to applicants who fail to meet your screening standards[.]"

22.     GIS represents to employer customers such as Dollar General that, "The background screening company will issue the appropriate documents to the applicant in order to make sure that the company complies with Fair Credit Reporting Act (FCRA) standards.  http://www.geninfo.com/backgroundreporter/whitepapers/GIS-Background-Screening-FAQ-Whitepaper.pdf any complies with Fair Credit Reporting Act (FCRA) standards."

23.     In fact, GIS has no idea how to comply with the employer provisions of the FCRA.  Instead, it has created a process for sending adverse action letters that assures that the employers it purports to represent violate the FCRA every time an applicant is denied employment in whole or in part because of a background check.

24.     The procedure that GIS follows to "satisfy" the FCRA employer requirements when an adverse action is to be taken do not actually involve Dollar General.  GIS makes the

adverse action decision for Dollar General immediately when it first generates a consumer report

background check on an employee applicant that its "automated report grading."  The decision is

final as of that first date.  As a recent Federal Court has explained in a comparable case,

"LexisNexis also adjudicated plaintiffs. The member employers did not conduct any review of

the adjudication, and thus the adjudication of plaintiffs is, quite literally, a decision for

employment purposes that adversely affects plaintiffs. § 1681a(k)(1)(B)(ii)." *Goode v.*

*LexisNexis Risk & Info. Analytics Group, Inc.*, 848 F. Supp. 2d 532, 539 (E.D. Pa. 2012).

25.     After this adverse action adjudication and coding, GIS mails a letter that it claims

constitutes a "pre-adverse action" notice otherwise required by Dollar General pursuant 15

U.S.C. § 1681b(b)(3).  However, when this notice is sent, the decision has already been made.  If

no action is taken by the consumer to dispute or correct a report, there is no new action or task

performed by Dollar General.  At best the consumer's dispute would constitute a condition

subsequent to the adverse action – changing that which has occurred.

26.     Subsequently on January 23, 2012 Marcum received a letter from GIS, a copy of

his consumer report, and a written summary of his FCRA rights.

27.     The letter from GIS and the enclosed FCRA Rights Summary failed to comply

with the FCRA and did not satisfy Dollar General's separate duty to provide such documents.

28.     Not only did GIS date and mail the letter on the same day it made Defendant's

decision not to hire Marcum, but Marcum did not receive the letter until three days after

Defendant decided not to hire him.

29.     Neither GIS nor Dollar General provided Marcum a copy of his or her report and

a disclosure of FCRA rights a sufficient amount of time before they took an adverse action so

that he could rectify any inaccuracies in the report.

30.     Less than five business days after mailing the first letter, GIS then mailed Marcum a second similar notice letter that it and Dollar General claim would constitute the actual "adverse action."

31.     As a result, the Defendant failed to provide Marcum with a copy of the consumer report and a description in writing of his FCRA Rights before taking an adverse action against him based in whole or in part on the consumer report.

**DOLLAR GENERAL AND GIS PROVIDED AN INCOMPLETE CONSUMER REPORT**

32.     Even if the Court found that Defendant and its agent GIS provided the GIS criminal background report to Marcum, that document was not the complete report used in whole or in part to make Dollar General's hiring decision.

33.     Dollar General, either separately or through GIS also uses information from a product sold under the "Esteem" brand name.   Under Esteem, "Participating employers can join, allowing them to contribute their own cases and use the database as needed to help make faster hiring decisions. Use this search as the first step in their screening process, allowing them to quickly and cost-effectively eliminate candidates from the hiring process that don't meet an employer's standards.  This database provides employers with access to:  theft and shoplifting cases supplied by more than 75,000 business locations across the country [and] Internal data shared by other employers that may not be available anywhere else, specifically in court records." www.lexisnexis.com/risk/solutions/retail-theft-contributory-database.aspx.

34.     This Esteem information is part of the consumer report considered by Dollar General in making its hiring decision.

35.     Dollar General obtained and used the Esteem information in Marcum's consumer report in order to make its hiring decision.

36.     Despite such use, Dollar General and GIS have not produced and provided to Marcum any of the Esteem information – favorable or unfavorable – contained in his consumer report.

## FACTS AS TO LEWIS

37.     On or about February 21, 2011 Lewis applied for employment with Defendant.

38.     As part of the application process Defendant provided Lewis with the same FCRA disclosure that it provided to Marcum, which disclosure contained the same deficiencies alleged above.

39.     Lewis was subsequently hired and then, after working for a very short time,

40.     Defendant abruptly fired him.

41.     On information and belief, Plaintiffs alleges that this adverse action was based in whole or in part on Lewis' consumer report.

42.     Despite the requirements of the FCRA, Lewis was never provided with a copy of the background report prior to being fired.

## FACTS COMMON TO PLAINTIFFS AND SIMILARLY SITUATED INDIVIDUALS

43.     Plaintiffs allege that the process of disclosure (or non-disclosure) and the timing of mailed notices alleged above as to Marcum was uniformly used by Dollar General and GIS for all or nearly all of its employment applicants.

44.     Plaintiffs allege that the process of disclosure (or non-disclosure) regarding Esteem was uniformly used by Dollar General and GIS for all or nearly all of its employment

applicants.

45.     The date on the supposed pre-adverse action letter does not represent in any

uniform manner the date on which that pre-adverse letter was mailed to employment applicants.

46.     Instead, the date of mailing was at least a day or two after the date of the pre-

adverse action letter, in part because GIS, upon information and belief, uses a third party mailing

service to post the letters.

47.     Under these circumstances, the pre-adverse action letter is a token gesture at best,

and a nullity at worst.  In any event, it does not comply with the FCRA.

48.     Because Defendant cannot delegate its duties under the FCRA, Defendant is liable

for the foregoing conduct of GIS as its authorized agent.

49.     On information and belief, Plaintiffs allege that Dollar General had actual or

constructive knowledge that GIS was not fulfilling its contractual obligations to send compliant

FCRA notices on behalf of Dollar General.

## APPLICABLE LAW

50.     Section 1681b(b)(2)(A) of the FCRA regulates the conduct of persons who obtain

a "consumer report" about employees or prospective employees as follows:

> Except as provided in subparagraph (B) [in cases of a consumer applying for a position
> over which the Secretary of Transportation may establish qualifications], a *person* may not
> procure a *consumer report, or cause a consumer report to be procured, for employment
> purposes with respect to any consumer, unless* –
>
> > a.  a clear and conspicuous disclosure has been made in writing to the consumer at
> > any time before the report is procured or caused to be procured, *in a document that
> > consists solely of the disclosure*, that a consumer report may be obtained for
> > employment purposes*; and*
> >
> > b.  the consumer has authorized in writing (which authorization may be made on the
> > document referred to in clause (i)) the procurement of the report by that person.

51.     Section 1681b(b)(2)(A) therefore imposes the duty on Defendant to provide a

"clear and conspicuous" disclosure to prospective or current employees that a consumer report

about them will be procured.  Further, § 1681b(b)(2)(A) mandates that the disclosure must be

limited only to a disclosure that a consumer report may be obtained for employment purposes

and to the written authorization of the prospective or current employee; no other documents or

provisions are allowed. Section 1681b(b)(2)(A) thus prohibits Defendant from including or

obtaining other information as part of the disclosure such as a release or waiver of rights or by

using multiple conflicting documents to obtain the authorization.

52.     Additionally, § 1681b(b)(3)(A) of the FCRA regulates the conduct of any person

who uses a "consumer report" to take an adverse action against any employees or prospective

employees as follows:

> Except as provided in subparagraph (B) [in cases of a consumer applying for a position
> over which the Secretary of Transportation may establish qualifications], in using a
> consumer report for employment purposes, before taking any adverse action based in whole or
> in part on the report, the person intending to take such adverse action shall provide to the
> consumer to whom the report relates –
>
> > i.      a copy of the report; and
> >
> > ii.     a description in writing of the rights of the consumer under
> >         this subchapter, as prescribed by the Federal Trade Commission
> >         under section 1681g(c)(3) of this title.

53.     The purpose of §1681b(b)(3)(A) is to provide a prospective or current employees

a sufficient amount of time to review the consumer report, correct any inaccuracies and to notify

the prospective employer of these inaccuracies before an adverse action is taken.

54.     In fact, in a 2006 Report and Recommendation decision by United States

Magistrate Judge Lauck, adopted by United States District Court Judge Payne, the Court

Held: "[T]he Court finds that a user must provide to a consumer a copy of his or her report and a disclosure of rights a sufficient amount of time before it takes adverse action so that the consumer may rectify any inaccuracies in the report, but that simultaneous provision of this report does not satisfy this requirement." *Williams v. TeleSpectrum, Inc*., 3:05CV853 (E.D. Va. Nov. 7, 2006).

55.    Thereafter, in 2008, United States District Judge Williams similarly held: "Even if the Court views the evidence in the light most favorable to defendant and agrees that defendant mailed the September 1st letter and the copy of plaintiff's consumer report on September 1, a reasonable jury could conclude that defendant sent the September 6th letter too quickly after it sent the September 1st letter. The Court notes that the Labor Day holiday fell on Monday, September 5, 2005, and defendant should have been aware that the holiday would result in a mail delivery delay. If plaintiff received the September 6th letter notifying him of defendant's adverse action at the same time he received the copy of his consumer report, he necessarily did not have a sufficient or reasonable period of time to dispute the inaccuracies in his consumer report before defendant took adverse action. " *Beverly v. Wal-Mart Stores, Inc.*, CIV.A. 3:07CV469, 2008 WL 149032 (E.D. Va. Jan. 11, 2008).

56.    For example, see Letter from Clark W. Brinckerhoff to Eric J. Weisberg (June 27, 1997), FTC Informal Staff Letter ("Brinckerhoff Letter II") (nothing that taking action a period of five business days after notice "appears reasonable."); *Williams v. Telespectrum, Inc*, Civil Action No. 3:05cv853 (E.D.Va. 2006); Report and Recommendation of Magistrate Judge Hannah Lauck dated November 7, 2006 adopted by Judge R. Payne January 8, 2005; *Kelchner v. Sycamore Manor Health Center*, 305 F.Supp.2d 429, 435 (M.D.Pa. 2004); etc. (holding a

reasonable period for the employee to respond to disputed information is not required to exceed five business days following the consumers receipt of the consumer's report from the employer); *Beverly v. Wal-Mart Stores, Inc*. Civil Action No. 3:07cv469 (E.D.Va. 2009) (consent Order providing ChoicePoint mailing of all Adverse Action Notices on behalf of its customers shall occur no earlier than five business days after the mailing of the Preadverse Action Notices); *Singleton v. Domino's Pizza, LLC*, 2012 U.S. Dist. LEXIS 626 (January 25, 2012) (Court denied Motion to Dismiss because the employer's disclosure form contained a liability release and Domino's therefore could not show that the form complied with the FCRA.).

57.     Dollar General's failure, by GIS, to leave any meaningful gap of time between the provision of the consumer report and the actual and final adverse action notice violated a now well-established FCRA requirement.

58.     Defendant's uniform omission of Esteem information from its notice letters also violates the obvious requirement imposed by § 1681b(b)(3) to provide the actual consumer reporting information used by the employer.

59.     Defendant procured consumer reports for Plaintiffs and those similarly situated for employment purposes without first obtaining their written authorization to do so on a clear and conspicuous written disclosure in a document that consists solely of the disclosure that a consumer report may be obtained for employment purposes.

60.     Defendant failed to provide a copy of the consumer report a sufficient amount of time before it took the adverse action to allow Plaintiffs to discuss the report with Defendant or otherwise respond before the adverse action was taken.

61.     Defendant failed to hire/fired Plaintiffs without providing him with any advance notice that it was going to take that adverse action, without providing him with a copy of the consumer report, and without providing him with a summary of his rights under the FCRA.

62.     Upon information and belief, it is Defendant's standard hiring practice to rely on consumer reports, and when the results are unsatisfactory, to fire or refuse to hire/fire people on the spot without the statutory disclosure or written authorization, without giving them any advance notice of the adverse action, without first providing them with a copy of their consumer report, and without providing them with a summary of their rights under the FCRA before taking the adverse action.

## DEFENDANT ACTED WILFULLY

63.     Defendant's procedures and conduct were willful. They were carried out in the manner that Defendant intended and not by mere accident or mistake.

64.     The statutory language and mandates restricting and governing Defendant's business have been in effect for decades.

65.     Defendant's conduct was at least reckless in failing to make an appropriate and effective effort to ascertain the FCRA provisions governing its conduct.

66.     Defendant knew or should have known about its legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA and in the

67.     Defendant obtained or had available substantial written materials that apprised it of its duties under the FCRA. Any reasonable employer knows about or can easily discover these mandates.

68.     Despite at least the constructive knowledge of these legal obligations, Defendant acted consciously in breaching its known duties and depriving Plaintiff, and similarly situated individuals, of their rights under the FCRA.

69.     As a result of these FCRA violations, Defendant is liable to Plaintiffs and similarly situated individuals for statutory damages from $100.00 to $1,000.00 pursuant to 15 U.S.C. §1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. §1681n(a)(2) for the FCRA violations alleged herein, and for attorney's fees and costs pursuant to §1681n and §1681o.

70.     In the alternative to the Plaintiffs' allegations that these violations were willful, they allege that the violations were negligent and will seek certification of that issue.

## CLASS ACTION ALLEGATIONS

71.     **The FCRA Class.** Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action for themselves and on behalf of a class (the "Class") initially defined as follows:

> All employees or prospective employees of Defendant residing in the United States (including all territories and other political subdivisions of the United States) who were the subject of a consumer report which was used by Defendant to make an employment decision during the FCRA statute of limitations period, 15 U.S.C. §1681p, next preceding the filing of this action and during its pendency.

72.     **The FCRA Sub-Classes**.  Plaintiffs also allege the following FCRA Sub-Classes, of which Plaintiffs are members:

> a.  All employees or prospective employees of Defendant residing in the United States (including all territories and other political subdivisions of the United States) who were the subject of a

consumer report which was used by Defendant to make an employment decision during the FCRA statute of limitations period, 15 U.S.C. §1681p, next preceding the filing of this action and during its pendency, against whom Defendant took an adverse action based in whole or in part on information contained in the consumer report before providing a copy of the consumer report as required by the FCRA, 15 U.S.C. § 1681b(b)(3)(A)(i);

b.   All employees or prospective employees of Defendant residing in the United States (including all territories and other political subdivisions of the United States) who were the subject of a consumer report that also contained Esteem database information and which was used by Defendant to make an employment decision during the FCRA statute of limitations period, 15 U.S.C. §1681p, next preceding the filing of this action and during its pendency, against whom Defendant took an adverse action based in whole or in part on information contained in the consumer report before providing a description in writing of the rights of the consumer under the FCRA, as required by the FCRA, 15 U.S.C. §1681b(b)(3)(A)(ii);

73.    **Numerosity.  FED. R. CIV. P. 23(a)(1).**  The Class members are so numerous that joinder of all is impractical. The names and addresses of the Class members are identifiable through documents maintained by the Defendant, and the Class members may be notified of the pendency of this action by published and/or mailed notice.

65.    **Existence and Predominance of Common Questions of Law and Fact.  FED. R. CIV. P. 23(a)(2).**  Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual members.  These common legal and factual questions include, among other things:

a.     Whether Defendant's employment application included a standalone document that contained only the "clear and conspicuous" disclosure mandated by §1681b(b)(2)(A);

2

b.     Whether Defendant's procedure violated §1681b(b)(2)(A) by failing to make a "clear and conspicuous" disclosure in a document that consists solely of the disclosure;

c.     Whether Defendant's standard procedure to use GIS to make the FCRA disclosures required by §1681b(b)(3)(A) violated the FCRA;

d.     Whether the uniform timing of Defendant's FCRA disclosures complied with § 1681b(b)(3)(A)(ii));

e.     Whether Defendant knowingly and intentionally acted in conscious disregard of the rights of the consumer;

f.     Whether Defendant received Esteem reports on Plaintiffs and similarly situated individuals and whether it uniformly failed to share this information in the reports it provided to job applicants;

g.     Whether GIS determined who would be hired and who would not be hired at Defendant based on predetermined adjudication rules;

h.     Whether Dollar General knew or should have known that GIS' procedures for adverse action services violated the FCRA;

66.     **Typicality. FED. R. CIV. P. 23(a)(3))**.  Plaintiffs' claims are typical of the claims of each Class member.  Plaintiffs for class certification purposes seek only statutory and punitive damages.  Plaintiffs would only seek individual or actual damages if class certification is denied. In addition, Plaintiffs are entitled to relief under the same causes of action as the other members of the Class.

67.     **Adequacy.** Plaintiffs are adequate representatives of the Class because their interests coincide with, and are not antagonistic to, the interests of the members of the Class they seek to represent, they have retained counsel competent and experienced in such litigation, and they intend to prosecute this action vigorously.  FED. R. CIV. P. 23(a)(4).  Plaintiffs and their Counsel will fairly and adequately protect the interests of members of the Class.

68.     **Superiority.**   Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy.  FED. R. CIV. P. 23(b)(3).  The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct.  It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them.  Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts.  Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct.  By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

69.     **Injunctive Relief Appropriate for the Class.**  Class certification is appropriate because Defendant has acted on grounds generally applicable to the Class, making appropriate

equitable injunctive relief with respect to Plaintiff and the Class members. FED. R. CIV. P.

23(b)(2).

### COUNT ONE: VIOLATION OF THE FCRA §1681b(b)(2)(A)(i)

70.     Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth

at length herein.

71.     Defendant willfully violated the FCRA, 15 U.S.C. §1681b(b)(2)(A)(i), because it

failed to provide a clear and conspicuous written disclosure in a document that consists solely of

the disclosure to applicants and employees that a consumer report may be obtained for

employment purposes.

72.     Plaintiffs seek statutory damages for themselves and all others similarly situated

for this violation pursuant to 15 U.S.C. § 1681n(a)(1)(A).

73.     Plaintiffs seek punitive damages and equitable relief for this violation pursuant to

15 U.S.C. § 1681n(a)(2).

74.     In the alternative to the Plaintiffs' allegations that these violations were willful,

they allege that the violations were negligent and seek issue certification of that issue and

appropriate remedy, if any, under 15 U.S.C. §1681o.

### COUNT TWO: VIOLATION OF THE FCRA § 1681b(b)(3)(A)(i)

75.     Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth

at length herein.

76.     Defendant willfully violated the FCRA, 15 U.S.C. §1681b(b)(3)(A)(i), because it

failed to provide a copy of the consumer report used to make an employment decision to

Plaintiffs and all other similarly situated applicants and employees before taking an adverse action that was based in whole or in part on that report.

77.     Plaintiffs seek statutory damages for themselves and all others similarly situated for this violation pursuant to 15 U.S.C. § 1681n(a)(1)(A).

78.     Plaintiffs seek punitive damages and equitable relief for this violation pursuant to 15 U.S.C. § 1681n(a)(2).

79.     In the alternative to the Plaintiffs' allegations that these violations were willful, they allege that the violations were negligent and seek issue certification of that issue and appropriate remedy, if any, under 15 U.S.C. §1681o.

### COUNT THREE: VIOLATION OF THE FCRA § 1681b(b)(3)(A)(ii)

80.     Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

81.     Defendant willfully violated the FCRA, 15 U.S.C. §1681b(b)(3)(A)(ii), because it failed to provide Plaintiffs and all other similarly situated applicants and employees the summary of rights required by this section of the FCRA before taking an adverse action that was based in whole or in part on a consumer report.

82.     Plaintiffs seek statutory damages for themselves and all others similarly situated for this violation pursuant to 15 U.S.C. § 1681n(a)(1)(A).

83.     Plaintiffs seek punitive damages and equitable relief for this violation pursuant to 15 U.S.C. § 1681n(a)(2).

84.     In the alternative to the Plaintiffs' allegations that these violations were willful, they allege that the violations were negligent and seek issue certification of that issue and appropriate remedy, if any, under 15 U.S.C. §1681o.

### COUNT FIVE: INDIVIDUAL CLAIM FOR DEFAMATION
### (Marcum Only)

85.     Upon information and belief, during the last 10 days in January 2012 and thereafter, Defendant's authorized representative, Ruth, informed various individuals, employed and not employed at Defendant, including Henry _____, that Marcum has been convicted of a firearms offense and domestic abuse charge.

86.     Those statements were false and actionable as defamation per se.

87.     Marcum suffered damages as a result.

88.     Every paragraph in this Complaint is hereby incorporated into every other paragraph.

WHEREFORE, Plaintiffs pray for relief as follows:

1.      Certification of a class as defined pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3);

2.      actual, statutory and punitive damages as pled;

3.      attorneys fees, expenses and costs;

4.      pre-judgment and post-judgment interest as provided by law; and

5.      such other relief the Court does deem just, equitable and proper.

### TRIAL BY JURY IS DEMANDED.

Respectfully submitted,

**JONATHAN MARCUM and JACKIE E. LEWIS, SR.**
**For themselves and on behalf of all similarly situated**
**individuals**

_____/s/_____
Leonard A. Bennett, Esq.
VSB #37523
Attorney for Plaintiff
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, VA 23601
(757) 930-3660 – Telephone
(757) 930-3662 – Facsimile
E-mail:lenbennett@clalegal.com

Christopher Colt North
VSB #16955
Attorney for Plaintiff
The Consumer & Employee Rights Law Firm, P.C.
751-A Thimble Shoals Boulevard
Newport News, Virginia 23606
Phone: (757) 873-1010
Fax: (757) 873-8375
Email: cnorthlaw@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of February, 2013, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

David N. Anthony, Esq.
Troutman Sanders, LLP.
1001 Haxall Point
P.O. Box 1122
Richmond, VA 23219
E-mail:  david.anthony@troutmansanders.com

John C. Lynch
Troutman Sanders LLP
P. O. Box 61185
222 Central Park Ave
Suite 2000
Virginia Beach, VA 23462
Email: john.lynch@troutmansanders.com

_____/s/_____
Leonard A. Bennett, Esq.
VSB #37523
Attorney for Plaintiff
CONSUMER LITIGATION  ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, VA 23601
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
lenbennett@clalegal.com