## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

JONATHAN MARCUM, *et al.*, *on*
*behalf of themselves and all similarly*
*situated individuals*

               Plaintiffs,                 Civil Action No. 3:12cv108

v.

DOLGENCORP, INC. a/k/a Dolgencorp,
LLC a/k/a Dolgen, LLC, d/b/a Dollar
General

               Defendant.

### MEMORANDUM IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT

Plaintiffs, Jonathan Marcum and Jackie E. Lewis, Sr. (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated (the "Class" as further defined below), and Defendant Dolgencorp, Inc. a/k/a Dolgencorp, LLC a/k/a Dolgen, LLC, d/b/a Dollar General ("Defendant" and, together with Plaintiffs and Class, the "Parties") entered into a Class Action Settlement Agreement and Release ("Settlement Agreement" or "Agreement") (attached as Exhibit 1). Plaintiffs submit this memorandum of law in support of their Motion for Preliminary Approval of Settlement, Certification of the Settlement Class, and Approval of the Form, Manner, and Administration of Notice. A final motion supporting the fairness of the proposed settlement will be submitted after members of the Settlement Class have received notice and have had an opportunity to object, comment, or opt-out, prior to the Court's final approval hearing.

## I.     FACTS AND PROCEDURAL HISTORY

### 1.   Class Allegations

On February 13, 2012, Mr. Marcum commenced this action alleging that the Defendant willfully failed to comply with the pre-adverse action notification requirements of the Fair Credit Reporting Act ("FCRA"), at 15 U.S.C. § 1681b(b)(3) prior to taking adverse employment action against him. On October 10, 2012, Plaintiff filed an Amended Class Complaint in the Litigation, which added an additional claim alleging that the Defendant willfully failed to comply with the disclosure and authorization requirements in 15 U.S.C. § 1681b(b)(2) prior to obtaining a consumer report about him for employment purposes. On February 27, 2013, Mr. Marcum filed a Second Amended Complaint (Doc. 45) adding Mr. Lewis as a Named Plaintiff.

Plaintiffs now seek certification of two classes—one regarding 15 U.S.C. § 1681b(b)(2) claim and the other concerning the 15 U.S.C. § 1681b(b)(3) claim.

Section 1681b requires a user of an employment-purposed consumer report (such as a background check) to make certain specific disclosures before it takes any adverse action (hiring or firing decisions) based in whole or in part on the report. The statute provides:

> Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—
> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and
> (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. §1681b(b)(2).  Furthermore, 15 U.S.C. §1681b(b)(3) provides:

> Except as provided in subparagraph (B), in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action will provide to the consumer to whom the report relates—
> (i) a copy of the report; and
> (ii) a description in writing of the rights of the consumer under this subchapter, as prescribed by the Bureau under section 1681g(c)(3) of this title.

Section 1681g(c)(3) tasks the Consumer Financial Protection Bureau (CFPB), and previously the Federal Trade Commission (FTC), with creating and making available a specific form summarizing various consumer protections and requirements provided in the FCRA. Thus, § 1681b(b)(3) requires that an employer who intends to use a consumer report in making an adverse hiring/firing decision provide the consumer (i.) a copy of the report it will use and (ii.) the current CFPB/FTC prescribed FCRA "Summary of Rights" form.

In this case, the Plaintiffs alleged that (a.) they were denied employment with the Defendant because of their employment-purposed consumer report; (b.) either the adverse employment decision had been made before the Plaintiffs received a copy of their report and summary of rights or the Defendant did not provide these in a meaningful and reasonable time before this decision; and (c.) the Summary of Rights form Defendant eventually sent was an outdated summary and not the current form required by the CFPB/FTC.

Defendant has denied all of Plaintiffs' claims and further denies any wrongdoing and any liability to Plaintiffs or to the putative class members.

### 1. **Settlement**

The Parties began both formal and informal discovery early in this matter on nearly all issues. Significant formal discovery was nearly completed in the litigation, together with substantial informal exchanges with Defendant and its third party agent.  Discovery was sufficiently significant that Plaintiff's counsel had already completed enough discovery of the interrelated systems and events in the case and between the defendant and important third parties in order to fully assess the strengths and weaknesses of the case. The Parties then engaged in significant settlement discussions over a protracted period of time, many of which were supervised by Magistrate Judge Novak. These discussions lasted over a year, with each side

making significant concessions. Through these mediation sessions and correspondences, the Parties reached a proposed class settlement, the terms of which are memorialized in the Settlement Agreement (Ex. 1).[1] In this Settlement Agreement, the Parties agreed to settle the claims on a class basis for $4,080,000.00 ("Settlement Amount").

## 2. **CAFA Notices**

In compliance with the Class Action Fairness Act, 28 U.S.C. § 1715, within 10 days of this filing, Defendant will serve written notice of the proposed class settlement upon the United States Attorney General and the appropriate State Attorneys General.

## 3. **Request for Entry of Preliminary Approval Order.**

The Parties now seek entry of the proposed Preliminary Approval Order (Ex. 2), preliminarily certifying the proposed class and approving the proposed class settlement.

## II. PROPOSED CLASS ACTION SETTLEMENT TERMS

During the mediation process and negotiations leading to the Settlement, the Parties worked to address and permanently resolve in the Settlement Agreement the allegations of both of the two putative classes alleged in the Complaint.

The proposed settlement encompasses two classes. The first class, the Rule 23(b)(2) class, is the most substantial and far-reaching component of the settlement. It does not release actual damages and would benefit several thousand consumers across the country. The second class, the Rule 23(b)(3) class, does release FCRA and related claims for the roughly 112,000 consumers in the proposed monetary relief class in exchange for a pro rata share of the $4.08 million gross common fund. Each class is described below.

---

[1] All capitalized terms used herein have the meanings defined in this Memorandum or in the Settlement Agreement.

1.  **Rule 23(b)(2) Class Settlement**

The Parties determined that the violations alleged by the 15 U.S.C. § 1681b(b)(2) class members are largely procedural in nature, and so any claim for statutory damages brought by the that class was incidental to its interest in compelling changes in the Defendant's disclosure practices. The Parties further recognized that such changes would inure to the benefit of class members because, due to standard practices in the Defendant's hiring process, thousands of individuals who apply for employment with the Defendant in the future would likely be the subject of an improper disclosure regarding background consumer reports. Thus, to prevent the same issues and concerns regarding Defendant's disclosures from arising in the future, in order to ensure final resolution and ongoing peace, the Defendant would need to agree to substantial changes in its disclosures. Accordingly, the Parties have agreed to certification of a Rule 23(b)(2) Settlement Class, as described more fully below and in the Settlement Agreement. Defendant, with the help of Class Counsel, has created and will implement use of a new disclosure that complies with the FCRA and the regulations implemented by the CFPB. This injunctive relief is a significant shift from the Defendant's current disclosures practices concerning its use of consumer background reports used during its hiring process and will prevent the Defendant from committing similar FCRA violations in the future.

The Rule 23(b)(2) Settlement Class is defined as:

> All natural persons who, according to the records of Defendant or its agents, were the subject of a background check report used by the Defendant or on the Defendant's behalf for an employment decision during the period beginning on February 13, 2010 through the date both parties execute the formal settlement agreement settling this matter ("The Rule 23(b)(2) Class).

Subject to the terms and conditions of the Settlement Agreement, Plaintiffs and Defendant have agreed to move jointly for the Court to enter, as part of the Final Judgment and Order, an

Injunctive Relief Order attached as Exhibit A to the Settlement Agreement. Plaintiffs pursued this Litigation, in part, to address certain practices relating to the use of background consumer reports by the Defendant. The Defendant will continue to use the FCRA-compliant form until the earlier of: (1) any change in the law regarding the form; (2) a change in the actual substantive requirements for the form as promulgated by the FTC or the CFPB; or (3) the expiration of two years from the date of the Settlement Agreement.

The injunctive relief order also requires the Defendant to provide all Rule 23(b)(2) class members a copy of the CFPB's Summary of Consumer Rights found at 12 C.F.R. Appendix K as of the date of the Settlement Agreement, as well as the disclosures required by 15 U.S.C. § 1681b(b)(2)(A)(i).

2. **Certification of a Fed. R. Civ. P. 23(b)(3) Settlement Class.**

Additionally, and for settlement purposes only, the Parties seek preliminary certification of a Fed. R. Civ. P. 23(b)(3) class, defined in the proposed Agreed Preliminary Approval Order as follows:

> All natural persons who, according to the records of Defendant or its agents, were the subject of a background check report used by the Defendant or on the Defendant's behalf for an adverse employment decision during the period beginning on February 13, 2007 through July 1, 2013 ("Rule 23(b)(3) Class").

The Rule 26(b)(3) Class is divided into two subclasses:

> "Group One Rule 23(b)(3) Class": All natural persons who, according to the records of Defendant or its agents, were the subject of a background check report used by the Defendant or on the Defendant's behalf for an adverse employment decision during the period beginning on February 13, 2010 through July 1, 2013.

> "Group Two Rule 23(b)(3) Class": All natural persons who, according to the records of Defendant or its agents, were the subject of a background check report used by the Defendant or on the Defendant's behalf for an adverse employment decision during the period beginning on February 13, 2007 through February 12, 2010.

3. **Class Representative and Class Counsel Appointment.**

For settlement purposes, Plaintiffs Marcum and Lewis request appointment as the Class Representatives on behalf of the Class Members. Furthermore, Leonard A. Bennett, Matthew J. Erausquin, Susan M. Rotkis, and Casey S. Nash of Consumer Litigation Associates, P.C., and Christopher C. North and William L. Downing of The Consumer & Employee Rights Law Firm, P.C., request appointment as counsel for the Class Members ("Class Counsel").

4. **Third-Party Settlement Administrator**

Plaintiffs' counsel has started to work with the class settlement administrator, American Legal Claim Services, LLC (the "Settlement Administrator"), to oversee the administration of the settlement and the notification to Class Members. All costs and expenses for the Settlement Administrator are to be paid from the Administration Fund, established pursuant to the Settlement Agreement ¶ 7.5. The Settlement Administrator will be responsible for mailing the approved class action notices and claim forms to the Class Members.  If this Class Action Settlement receives final approval, the Class Administrator will verify that the settlement checks were mailed to the Class Members who made a valid claim.

5. **Mailed Notice**

Before sending the written notices to the Class Members, the Class Administrator will research and update the Class Members' addresses. After completing the process of updating addresses, in the manner described in the Agreement, the Settlement Administrator will send, via First Class U.S. mail, the Court-approved written notice of the settlement to each Group One and Group Two Rule 23(b)(3) Class Member at his or her last known valid address. Additionally, although the Parties do not believe that individualized direct notice is required for the Rule 23(b)(2) Class Members, notice will be provided to them as follows: (a) for those Rule 23(b)(2) class members who are also members of the Rule 23(b)(3) class, the Rule 23(b)(3) direct notice

will provide the summary of the terms of the Rule 23(b)(2) settlement; and (b) for those Rule 23(b)(2) class members who are not members for the Rule 23(b)(3) class, the Settlement Administrator will provide direct notice through a reasonable procedure by mail and electronic mail (to the extent available and reasonably feasible). If any notice is returned with a new address, the notice will be re-mailed by the Settlement Administrator to the new address. The notice will be sent in substantially the form attached as the one attached to the Settlement Agreement. The Settlement Administrator will send the appropriate class notice to each Class Member no later than forty-five (45) days after the Court's entry of the Order of Preliminary Approval of Class Action Settlement.  (Ex. 1, ¶ 4.2) In addition to the Mail Notice plan, the Settlement Administrator will establish a case-specific, standalone website to provide notice of the Settlement. The website will contain relevant information such as the Settlement Agreement, the Mail Notice, Claim Form, Preliminary Approval Order, and contact information for the Settlement Administrator.  (Ex. 1, ¶ 4.2.5).

6. **Settlement Payment.**

Defendant will make a one-time Settlement Amount payment of $4,080,000.00 on Plaintiffs' and Class Members' behalf (the "Settlement Amount Payment") to be deposited by the Settlement Administrator into a Claims Fund account established pursuant to the Settlement Agreement. (Ex. 1, ¶ 7.1).

Notice and Administration is to be paid from the Settlement Amount Payment. Such expenses will be fixed by agreement to be obtained from the Settlement Administrator. The likely expense will be less than $270,000.00.  Thus, the "net" Claims Fund will be approximately $3,810,000.00. Attorney's fees, not to exceed 25% of the net settlement fund, reimbursement of

attorney's costs, and service awards not to exceed $10,000 per class representative will also be deducted from the settlement fund. (Ex. 1, ¶ 7.2).

There are approximately 57,000 Group One Rule 23(b)(3) Class Members and 55,000 Group Two Rule 23(b)(3) Class Members. The Claims Fund will be divided as follows: (a) after payment of costs of notice and administration in a structure that pays each Group One Rule 23(b)(3) a check in the amount of $53.00, to the extent the fund is sufficient to pay such an amount, net after common fund attorneys' fees and costs of notice and administration are deducted from the Settlement Fund. These funds will be automatically paid and will become stale after sixty (60) days, thereafter waterfalling into the Group Two claims fund amount; and (b) Group Two Rule 23(b)(3) Class Members will be eligible for payment on submission of a valid Claim Form. The Settlement Fund will be allocated, after the payments of costs of notice and administration in a structure to reserve Group Two claims in the initial amount of $294,000.00 (to the extent the fund is sufficient to reserve such an amount), net after common fund attorneys' fees and costs of administration, but plus the uncashed Group One Rule 23(b)(3) checks become stale. Group Two Rule 23(b)(3) Class Members will receive a pro rata payment, capped at $53.00, based on the number of Group Two Rule 23(b)(3) Class Members that submit a Valid Claim Form. The Proposed Claim Form (attached to the Settlement Agreement) is a simple, one-page form that requires only confirmation of the Class Member's name and current address, and an affirmation that they were unaware of the accrual of their claim pursuant to 15 U.S.C. § 1681b(b)(3) prior to February 13, 2010. Promptly after entry of the Preliminary Approval Order, the Defendant will pay to the Settlement Administrator the Claim Fund amount. (Ex. 1, ¶ 7.1).

The Class Administrator will mail a settlement check to each Class Member that submits a claim and otherwise does not exclude himself or herself from the Class Action Settlement in accordance with the Settlement Agreement.  (Ex. 1, ¶ 7.6).

**7. <u>Narrow Release</u>**

The scope of the release to which each class member would be bound was a substantial point of negotiation. The Settlement Agreement narrowly tailors the release so that it is limited to the claims and issues in this case.

The Rule 23(b)(3) class members, each of whom will receive a cash payment, will release Defendant and related persons from all claims resulting from, arising out of, or in any way connected to the FCRA or FCRA State Equivalents other than potential claims under 15 U.S.C. § 1681s-2b or state law equivalents of that subsection.  In contrast, Rule 23(b)(2) class members do not release their underlying claims. Instead, any Rule 23(b)(2) class member may pursue individual claims for actual damages. The Rule 23(b)(3) Settlement Class has agreed to a broader release than the Rule 23(b)(2) Settlement Class because the cash payments that its class members will receive under the Settlement Agreement are intended to compensate them for any possible harm that they might have alleged in this case had it proceeded to trial. Rule 23(b)(2) class members forgo only their right to bring such claims in a class action and waive any separate remedy for a willful violation of the FCRA (punitive and statutory damages) or State Equivalent, except for any claims arising under 15 U.S.C. § 1681s-2b or state law equivalents.

The Settlement does not permit a member of the proposed settlement classes to file a new class action based on the same claims asserted here and resolved by the proposed settlement, regardless of the type of damages that would be sought in such a lawsuit. This waiver of the class action procedural device is reasonable in light of the industry-changing injunctive relief that

class members have achieved through the use of that device in this lawsuit.

## 1. Uncashed or Expired Settlement Checks

Settlement Checks that are returned, undeliverable, or remain uncashed for sixty (60) days from the date upon which they were mailed to Class Members will have no legal or monetary effect. After expiration of the sixty-day period after settlement checks are mailed to Class Members, any sums represented by uncashed settlement checks will revert to the Claims Fund to be distributed to an approved cy pres beneficiary. Plaintiffs have proposed the Virginia Poverty Law Center.[2]

## 2. Class Counsel's Fees, Costs, and Expenses.

Defendant agrees to pay, and will not contest, an award of up to 25 percent (25%) of the Settlement Fund for attorneys' fees and expenses as the successful party in the litigation, subject to court approval and for settlement purposes only, pursuant to 15 U.S.C. § 1681n(c). (Ex. 1, ¶ 7.3).

## 3. Exclusions and Objections

Any Class Member who desires to be excluded from the class must send a written request for exclusion to the Settlement Administrator with a postmark date no later than the date set by the Court to object to the Settlement and provided in the Class Notice. (Ex. 1, ¶ 5.1). The Settlement Administrator will provide a list of the names of each Class Member who submitted a timely exclusion to counsel for Defendant and Class Counsel after the deadline passes.

## III. ARGUMENT

---

[2] http://www.vplc.org/

"The class-action device was designed as 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"  *Gen. Tel. Co. of SW. v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). "Class relief is 'peculiarly appropriate' when the 'issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in the same manner to each member of the class.'"  *Id*.  "For in such cases, 'the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23.'"  *Id*.

There is a strong judicial policy in favor of settlement, in order to conserve scarce resources that would otherwise be devoted to protracted litigation. *See In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001); *see also Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010) (there is an "especially strong" presumption in favor of voluntary settlements in "class actions . . . where substantial judicial resources can be conserved by avoiding formal litigation."); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) (same); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (same); 2 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). This includes the "strong initial presumption" in class action cases "that the compromise is fair and reasonable." *MicroStrategy*, 148 F. Supp. 2d at 663 (internal quotation marks omitted). Proposed settlements must, nevertheless, satisfy the requirements of Rule 23.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 592 (1997).

Rule 23 "states that '[a] class action may be maintained' if two conditions are met: The suit must satisfy the criteria set forth in subdivision (a) *(i.e.,* numerosity, commonality, typicality,

and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,* 599 U.S. 393, 398 (2010) (quoting Fed. R. Civ. P. 23).  Each condition is addressed below.

## A. The Rule 23(a) Requirements Are Satisfied

Rule 23(a) sets forth four basic requirements for any class action—numerosity, commonality, typicality, and adequacy. This Lawsuit satisfies the Rule 23(a) prerequisites. Each Rule 23(a) factor is considered in turn below.

### 1.    Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." There is no set minimum number of potential class members that fulfills the numerosity requirement. *See Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984) (citing *Kelley v. Norfolk & Western Ry. Co.*, 584 F.2d 34 (4th Cir. 1978)). However, where the class numbers 25 or more, joinder is usually impracticable. *Cypress v. Newport News General & Nonsectarian Hosp. Ass'n,* 375 F.2d 648, 653 (4th Cir. 1967) (18 class members sufficient); *cf. Kennedy v. Va. Polytechnic Inst. & State Univ.*, 2010 U.S. Dist. LEXIS 101491, at *6 (W.D. Va. Sept. 23, 2010) ("it is exceedingly rare to certify classes with less than 25 members").

The numerosity requirement is met here. There are approximately 112,000 Group One and Group Two Rule 23(b)(3) Class Members, including the Named Plaintiffs. Defendant also estimates that the number of Rule 23(b)(2) Class Members is within two percent of the same number. Joinder of this many individuals is neither possible nor practical, so the first prong of the certification test has been met. *See Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 425 (4th Cir. 2003) (finding that a class of 1,400 members "easily satisfied Rule 23(a)(1)'s numerosity requirement").

### 2.     Commonality

Rule 23(a)(2) requires that the court find that "that there are questions of law or fact common to the class." "Commonality is satisfied where there is one question of law or fact common to the class, and a class action will not be defeated solely because of some factual variances in individual grievances." *Jeffreys v. Commc'ns Workers of Am., AFL-CIO*, 212 F.R.D. 320, 322 (E.D. Va. 2003).  "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 277, 131 S. Ct. 2541, 2551 (2011) (quoting *Falcon*, 457 U.S. at 157).  And the common issue must be such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. The standard is a liberal one that cannot be defeated by the mere existence of some factual variances in individual grievances among class members. *Jeffreys*, 212 F.R.D. at 322; *Mitchell-Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 557 (D. Md. 2006) (finding that factual differences among class members will not necessarily preclude certification "if the class members share the same legal theory.").

Here, by definition, members of the Settlement Class share the same questions of law and fact. The members of Settlement Classes are alleged to be the victims of policies and procedures whereby Defendant, in violation of the FCRA, did not give a lawful notice to consumers when it used certain consumer reports for employment purposes. Furthermore, the suit alleges that class members were also deprived of their right to be correctly and timely notified of their rights sufficiently far enough in advance of Defendant taking any adverse action against the consumer, based in whole or in part on information in the report.

The theories of liability as to all Settlement Class members, therefore, arise from the same practices and present basic questions that are common to all members of the Settlement

Class.

### 3.      Typicality

In the typicality analysis, "[a] class representative must be part of the class and possess the same interest and suffer the same injury as the class members."  *Lienhart v. Dryvit Sys., Inc.,* 255 F.3d 138, 146 (4th Cir. 2001). "Nevertheless, the class representatives and the class members need not have identical factual and legal claims in all respects.  The proposed class satisfies the typicality requirement if the class representatives assert claims that fairly encompass those of the entire class, even if not identical." *Fisher v. Va. Elec. and Power Co.,* 217 F.R.D. 201, 212 (E.D. Va. 2003).   "The typicality requirement mandates that Plaintiffs show (1) that their interests are squarely aligned with the interests of the class members and (2) that their claims arise from the same events and are premised on the same legal theories as the claims of the class members." *Jeffreys*, 212 F.R.D. at 322.  Commonality and typicality tend to merge because both of them "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Wal-Mart*, 131 S. Ct. at 2551 n.5.

Here, Plaintiffs' claims arise from Defendant's practices concerning the use of employment-purposed consumer reports and Defendant's procedures notifying consumers prior to taking adverse employment action based on such consumer reports. As discussed in the previous section, these are the same claims advanced on behalf of all of the Settlement Class Members.

The Plaintiffs are Settlement Class Members. Plaintiffs' claims thus rest on the same legal and factual issues as those of the Settlement Class Members.  This is the hallmark of

typicality. *See Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2001) (citing Fed. R. Civ. P. 23(a)(3)).

### 4.      Adequacy of Representation

"Finally, under Rule 23(a)(4), the class representatives must adequately represent the interests of the class members, and legal counsel must be competent to litigate for the interests of the class." *Jeffreys,* 212 F.R.D. at 323. "Basic due process requires that the named plaintiffs possess undivided loyalties to absent class members." *Fisher*, 217 F.R.D. at 212 (citing *Broussard v. Meineke Disc. Muffler Shops,* 155 F.3d 331, 338 (4th Cir. 1998)).

The adequacy of representation requirement is met here. The Named Plaintiffs understand and have accepted the obligations of a class representative, have adequately represented the interests of the putative class, and have retained experienced counsel who have handled numerous consumer-protection class actions. Plaintiffs' lead Counsel have effectively handled numerous consumer-protection and complex class actions, typically as lead or co-lead counsel. *Souter v. Equifax Info. Servs.*, *LLC*, 2011 U.S. Dist. LEXIS 34267, at *28 (E.D. Va. Mar. 30, 2011) (stating "the Court finds that Soutter's counsel [Leonard A. Bennett] is qualified, experienced, and able to conduct this litigation. Counsel is experienced in class action work, as well as consumer protection issues, and has been approved by this Court and others as Class Counsel in numerous cases.").

Plaintiffs have no antagonistic or conflicting interests with the Class Members. Both Plaintiffs and the Class Members seek statutory and punitive damages for Defendant's alleged unlawful actions. All of the individual Plaintiffs are members of the Settlement Class. Considering the identity of claims, there is no potential for conflicting interests in this action. Accordingly, the class is adequately represented as required by Rule 23.

**B.**     **The Rule 23(b) Requirements Are Satisfied.**

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem*, 521 U.S. at 614.  As discussed above, the Settlement is comprised of two classes—one that addresses the Complaint's 15 U.S.C. 1681b(b)(3) allegations and the other regarding the Complaint's 15 U.S.C. §1681b(b)(2) allegations. The 15 U.S.C. §1681b(b)(2) class is an injunctive-relief-only settlement class pursuant to Rule 23(b)(2), which applies where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

The 15 U.S.C. §1681b(b)(2) class provides for the payment of a monetary settlement to its members and therefore must meet the requirements of Rule 23(b)(3): that questions of law or fact common to the members of the Class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Eisen v. Carlisle Jacquelin*, 417 U.S. 156 (1974).

**1.   The 15 U.S.C. §1681b(b)(2) Class should be Certified under Rule 23(b)(2).**

Parties seeking class certification under Rule 23(b)(2) must show that the defendant has "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief . . . with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2); *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 329 (4th Cir. 2006) (alterations in original). More simply stated, Rule 23(b)(2) certification is proper "if members of the proposed class would benefit from the injunctive relief." *Cuming v. S.C. Lottery Comm'n*, No. 3:05-cv-03608-MBS, 2008 WL 906705, at *6 (D.S.C. March 31, 2008) (citing *Thorn*, 445 F.3d at 331). In addition,

17

any request for monetary relief by the class must be "incidental" to the injunctive relief before certification under Rule 23(b)(2) is appropriate. *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998); *Thorn*, 445 F.3d at 329 ("Rule 23(b)(2) does not 'cover cases where the primary claim is for damages, but is only applicable where the relief sought is . . . predominantly injunctive or declaratory.'") The Rule 23(b)(2) Settlement Class in this case satisfies both of these requirements.

Plaintiffs allege on behalf of the Rule 23(b)(2) Class that Defendant willfully failed to comply with the disclosure and authorization requirements in 15 U.S.C. § 1681b(b)(2) prior to obtaining an employment-purposed consumer report about the putative class members. Here, the Settlement Agreement treats all Rule 23(b)(2) class members alike by granting them the benefits of the injunctive relief changes. Protecting Plaintiffs' interests in the proper acquisition, use, and disclosure of their information as proscribed by the Injunctive Relief Order is analogous to the classic Rule 23(b)(2) cases in which "various actions in the civil-rights field" dealing with discrimination were certified as Rule 23(b)(2) class actions, so that class-wide discrimination could be remedied with a class-wide program of relief. *See* Fed. R. Civ. P. 23 advisory committee's note. This type of injunctive relief is a powerful, efficient, and effective way of protecting broad interests like privacy, or the proper treatment of information, when out-of-pocket monetary losses are sometimes difficult.

While Defendant maintains that it has always acted in compliance with the law, the fact that the Settlement modifies Defendant's conduct as to the Rule 23(b)(2) class as a whole makes it appropriate for certification under Rule 23(b)(2). *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557 (2011) ("The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or

declared unlawful only as to all of the class members or as to none of them.'") (citation omitted). The Injunctive Relief Order will provide a direct benefit to the Rule 23(b)(2) Settlement Class Members going forward because, due to the Defendant's standard procedures regarding the use of background consumer reports in its hiring process, future job applications are likely to be the subject of additional reports in the future.

The Rule 23(b)(2) Class meets Rule 23(b)(2)'s second requirement—that any request for monetary relief be merely "incidental" to the injunctive relief provided in the settlement. Plaintiffs seek only statutory damages on behalf of the Rule 23(b)(2) class. Plaintiffs do not seek actual damages because Defendant is alleged to have committed only technical violations of the FCRA. The alleged violation occurred when Defendant used an outdated version of the CFPB's disclosures regarding consumer reports. Because the Defendant provide a disclosure, albeit one with the incorrect verbiage, Defendant's violation is merely technical. Therefore, statutory damages would not compensate the Rule 23(b)(2) class members because they may not have suffered any harm. Plaintiffs only sought statutory damages to modify Defendant's conduct regarding its disclosure form. The settlement achieves this relief by requiring the Defendant to use an FCRA-compliant disclosure. In sum, the Rule 23(b)(2) Class is properly certified pursuant to Rule 23(b)(2) because the injunctive relief addresses the predominating interests of the class a and Plaintiffs' original demand for statutory damages was merely a means to that end.

### 2. The Class Should Be Certified Under Rule 23(b)(3)

Rule 23(b)(3) actions may be permitted in "situations in which class-action treatment is not as clearly called for, but may nevertheless be convenient and desirable." *Id*. at 615 (internal quotation marks omitted). To certify such a class, the court must find that "the questions of law or fact common to the members of the class *predominate* over any questions affecting

only individual members, and that a class action is *superior* to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added). Preliminary certification of the proposed class is appropriate under Rule 23(b)(3). The predominance and superiority factors are addressed below.

### a. *Predominance*

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "This analysis presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2); thus, the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3). In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).

Moreover, the Fourth Circuit has held that, even when present, individualized damage determinations may not preclude the conclusion that common questions of law and fact predominate. *See, e.g.*, *Ward v. Dixie Nat. Life. Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010); *Gunnells*, 348 F.3d at 428. Instead, "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1778 (2d ed. 1986).

The predominance requirement is satisfied here because the essential factual and legal issues regarding the Settlement Class Members' claims are common, i.e., whether: (1) Defendant failed to timely provide a FCRA-compliant summary of rights form to consumers prior to taking

adverse employment action against them based in whole or in part on an employment-purposed consumer report; and (2) Defendant failed to provide consumers with a copy of the employment-purposed consumer report sufficiently in advance of taking an adverse action against them based in whole or in part of the information contained in the report. Because these issues are common, and indeed are determinative of the Rule 23(b)(3) Settlement Class Members' claims, they far outweigh the importance of any individual issues particular to Settlement Class Members.

This conclusion accords with the findings of courts examining predominance in the context of similar consumer claims, alleging that plaintiffs were the victims of common practices. *See, e.g.*, *Talbott* ("Here, common questions predominate because of the standardized nature of [defendant's] conduct . . . ")  (Rule 23(b)(3) is normally satisfied where there is an essential common factual link, such as standardized documents and practices); *see also Amchem*, 521 U.S. at 625 (noting that "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud… ."). In this case, the allegations are that the Defendant failed to provide timely or legally adequate FCRA notices prior to taking an adverse action based in whole or in part on a consumer report.

Plaintiffs' and the putative class members' claims are identical, and all issues are subject to the same proof.  Proof of the class claims will leave nothing for Plaintiffs to prove individually. Class-wide claims predominate over any individual claims.

b. **_Superiority_**

The superiority inquiry requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3). When determining whether a class action is superior, the Court should consider the following factors:

>(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or  undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*Jeffreys,* 212 F.R.D. at 323; *see also* Fed. R. Civ. P. 23(b)(3)(A)-(D).

"In determining superiority, courts also consider the anticipated amount of recovery for each plaintiff.  Class actions are particularly appropriate where multiple lawsuits would not be justified because of the small amount of money sought by the individual plaintiffs." Advisory Committee's Note to 1996 Amendment to Rule 23.  In other words, a class action is superior when potential damages may be too insignificant to provide class members with incentive to pursue a claim individually. Thus, the class mechanism permits a large group of claimants to have their claims adjudicated in a single lawsuit.  The same is true here. Common issues predominate among the Rule 23(b)(3) Settlement Class. Further, the individual claims of Rule 23(b)(3) Settlement Class Members are small, thus providing little incentive for individual litigation, and the Settlement Class Members are dispersed over multiple states.[3] *See also Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.") (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (1997)). A class action in this case is superior to other available methods for the fair and efficient adjudication of the controversy because a class resolution of the issues described above outweighs the difficulties in management of separate and individual claims and allows access to the courts for those who might not gain such access standing alone, particularly

---

[3]  Manageability need not be considered in certifying a settlement class. *See Amchem*, 521 U.S. at 620 (1997) (stating that a trial court may disregard management issues in certifying a settlement class).

in light of the relatively small amount of the actual and statutory damage claims that would be available to individuals. Moreover, such a certification permits individual claimants to opt-out and pursue their own actions separately if they believe they can recover more in an individual suit. Thus, both predominance and superiority are satisfied. "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Bush*, 2012 WL 1016871, at *11 (quoting *Amchem*, 521 U.S. at 617). Rule 23(b)(3) was designed for situations such as this, where the amount in controversy for any individual claimant is small, but injury is substantial in the aggregate.

The class-action procedure is the superior mechanism for dispute resolution in this matter. The alternative mechanism, permitting individual lawsuits for a small statutory penalty, would be costly and duplicative. Through the class action procedure, these common claims can be brought in one proceeding, thereby eliminating unnecessary duplication, preserving limited judicial resources, and achieving economies of time, effort, and expense.

**C.      The Proposed Settlement Is Fundamentally Fair, Reasonable, and Adequate**

Although pretrial settlement of class actions is favored, "Rule 23(e) provides that 'a class action will not be dismissed without the approval of the court." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991) (citations omitted). "To this end, 'the role of the Court reviewing the proposed settlement of a class action under Fed. R. Civ. P. 23(e) is to assure that the procedures followed meet the requirements of the Rule and . . . to examine the settlement for fairness and adequacy." *In re MicroStrategy*, 148 F. Supp. at, 663.

"[T]he Fourth Circuit [has] adopted a bifurcated analysis, separating the inquiry into a settlement's 'fairness' from the inquiry into a settlement's 'adequacy." *Id*. These safeguards

ensure that "a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives." *Amchem*, 521 U.S. at 621; *see also In re Jiffy Lube*, 927 F.2d at 158 ("The primary concern addressed by Rule 23(e) is the protection of class members who rights may not have been given adequate consideration during the settlement negotiations.").  In this case, each set of factors weighs in favor of approving the Settlement.

### 1.  The Proposed Settlement Is Fair.

When evaluating the fairness of a settlement, the Court must evaluate the settlement against the following criteria: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel." *In re Jiffy Lube*, 927 F.2d at 159.  The fairness inquiry ensures that "the settlement was reached as a result of good-faith bargaining at arm's length, without collusion." *Id*.  These factors point persuasively to the conclusion that the settlement in this case is fair.

The settlement was reached after the Parties engaged in extensive discovery as well as contentious litigation and frequent communications regarding the merits of the case.  The parties sought to mediate the claims both privately and with the assistance of United States Magistrate Judge David J. Novak. The settlement was reached at arms-length after more than two days of in person settlement negotiations, which itself preceded months of back-and-forth negotiation of nearly every word and punctuation mark, with both sides making substantial concessions. Pursuant to the settlement, the putative class members are guaranteed a substantial portion of the potential recovery.  Class Counsel are also experienced class-action attorneys who specialize in consumer protection cases, and have determined settlement under the Settlement Agreement is in the Parties' best interests.

Considering the risks associated with litigating this matter, Defendant's defenses to

Plaintiffs' claims, the meaningful settlement discussions, and a United States Magistrate Judge's approval of the proposed compromise, the proposed settlement is fair and appropriate for approval. *See S. Carolina Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991) (concluding fairness met where "discovery was largely completed as to all issues and parties," settlement discussions "were, at times, supervised by a magistrate judge and were hard fought and always adversarial," and those negotiations "were conducted by able counsel" with substantial experience in the area of securities law).

### 2.  The Proposed Settlement Is Adequate.

In assessing the adequacy of the settlement, the Court should look to the following factors: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *In re Jiffy Lube*, 927 F.2d at 159.

While it is too early to address the last factor—the reaction of the Class Members to the proposed settlement—application of the other factors confirms that the proposed settlement is adequate and should be preliminarily approved.

### i.  *The Relative Strength of the Plaintiffs' Case and the Difficulty in Proving Liability.*

Defendant has disputed Plaintiffs' claims since the inception of this case. Because the Classes' claims are dependent upon recovery of statutory and punitive damages, any class recovery must be predicated on a finding that Defendant willfully violated the FCRA. *See* 15 U.S.C. § 1681n(a). Although a reckless violation of the FCRA satisfies the willfulness prerequisite for statutory and punitive damages, *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47

(2007), Class members here are still faced with the burden of proving that Defendant's conduct was indeed reckless. This burden is magnified by the significant question of whether or not Plaintiffs' claims—arguably only technical violations—would be sufficient to allow a recovery of statutory and punitive damages.

The class claim could also be challenged with a number of arguments. It could be vulnerable to jury nullification. Class members, almost by definition, possessed some type of derogatory public record, such as a criminal conviction. The rights protected in the relevant FCRA provisions are critical, but it is possible that a jury could find them merely technical or immaterial rights. Additionally, the Rule 23(b)(2) claims asserted in the case that accrued more than two years prior to the filing of the Complaint are most likely not viable claims due to statute of limitation issues.

Thus, while Plaintiffs believe strongly in their case, they also appreciate the litigation risk presented by the Defendant's defenses. Defendant was prepared to contest, among other things, class certification, FCRA liability, and willfulness. Regarding class certification, Plaintiffs were always mindful that this case could end up without class wide relief. Given the parties' arguments, the potential risks and expenses associated with continued prosecution of the Lawsuit, the probability of appeals, the certainty of delay, and the ultimate uncertainty of recovery through continued litigation, the proposed settlement is adequate. Thus, Plaintiffs concluded that settlement was appropriate to secure substantial relief for the Class while avoiding the risk of a defense victory.

### ii.    The Anticipated Duration and Expense of Additional Litigation

Aside from the potential that either side will lose at trial, the Parties anticipated incurring substantial additional costs in pursuing this litigation further.   The level of additional costs would significantly increase as Plaintiffs began their preparations for filing

for class certification and completing discovery.  Thus, the likelihood of substantial future costs favors approving the proposed settlement.

### iii.    The Proposed Class Notice is the Best Notice Practicable Under the Circumstances

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)."  *Hanlon*, 150 F.3d at 1025.  Pursuant to Rule 23(c)(2)(B):

> The notice [for Rule 23(b)(3) classes] must concisely and clearly state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members under Rule 23(c)(3).

Further, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by" the proposed settlement.  Fed. R. Civ. P. 23(e)(1).

Individual notice is being provided directly to each Rule 23(b)(3) Class Member and to each Rule 23(b)(2) member, as reasonably feasible (despite the fact that this notice is probably not required under Rule 23(b)(2)).  In addition, Class Counsel will establish a website with relevant information concerning the case and the Settlement Agreement.   Before sending the written notice, the Settlement Administrator will update the addresses for the Class Members using any of multiple third party "skip trace" products.   The parties expect that this address scrubbing process should be especially effective in that the Defendant has provided a social security number for many of the class members, which helps the Settlement Administrator pinpoint the most recent address with better precision.

The proposed notices, attached to the Settlement Agreement, are appropriate and comply with both Rule 23(c)(2)(B) and (e)(1).   The notices contain all of the required Rule 23

information and properly advise the Class Members of their rights. The proposed method for notifying the Class Members thus satisfies both Rule 23 and due process and constitutes the best notice practicable under the circumstances.

### IV.   CONCLUSION

For the foregoing reasons, Plaintiffs and Defendant respectfully request the Court grant the joint motion and enter the Preliminary Approval Order (Ex. 2):

(1) preliminarily approving the proposed class settlement,
(2) scheduling a fairness hearing,
(3) certifying the Settlement Class for purposes of the settlement,
(4) appointing Class Counsel, and
(5) approving the form and manner of notice proposed to be sent to all members of the Settlement Class.

Respectfully submitted,
**JONATHAN MARCUM,**
**on behalf of himself and others**
**similarly situated**


_____/s/_____
Casey S. Nash, VSB No. 84261
Matthew J. Erausquin, VSB No. 65434
Consumer Litigation Associates, P.C.
1800 Diagonal Rd., Ste. 600
Alexandria, VA 22314
Tel: (703) 273-7770
Fax: (888) 892-3512
casey@clalegal.com
matt@clalegal.com

Susan Mary Rotkis, VSB #40693
Leonard Anthony Bennett, VSB #37523
Consumer Litigation Associates, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
757-930-3660
757-930-3662 (fax)
srotkis@clalegal.com

Christopher Colt North, VSB #16955

William L. Downing, VSB #17704
The Consumer & Employee Rights Law Firm, P.C.
751-A Thimble Shoals Boulevard
Newport News, Virginia 23606
Phone: (757) 873-1010
Fax: (757) 873-8375
*Counsel for the Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on this 15th day of October, 2014, I have filed the foregoing with the court using the CM/ECF system, which will send a NEF to counsel of record in this case:

David Neal Anthony
TROUTMAN SANDERS LLP
Troutman Sanders Bldg
1001 Haxall Point
Richmond, VA 23219
Email: david.anthony@troutmansanders.com

John C. Lynch
David M. Gettings
TROUTMAN SANDERS LLP
222 Central Park Ave., Suite 2000
Virginia Beach, VA 23462
Email: john.lynch@@troutmansanders.com
Email: david.gettings@troutmansanders.com

*Counsel for the Defendant*

_____/s/_____
Susan Mary Rotkis, VSB #40693
Consumer Litigation Associates, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
757-930-3660
757-930-3662 (fax)
srotkis@clalegal.com